[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on December 24, 1996 at Oxford, Connecticut. There are no minor children issue of the marriage. The parties have resided continuously in this state for more than one year prior to the institution of this action.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The Court has carefully considered the criteria set forth in § 46b-81 and § 46b-82 Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
This case requires some background concerning events that occurred prior to this marriage in order to better understand the financial issues involved.
Prior to the parties marriage on December 24, 1996, the parties had a long relationship going back to April 1994.
In October 1992 the plaintiff was out of work as a result of a back injury incurred at his employment. This workmen's compensation claim was settled after the marriage for a total net of $39,703. ($28,000 lump sum and $11,703 temp total). The parties lived together commencing in April 1994 and at that time the plaintiff was unemployed. The defendant worked during this period and was the main support for herself, her two children and the plaintiff who did receive some disability payments from Sikorsky, his employer.
In July 1995, the plaintiff was in a very serious motorcycle accident. The plaintiff suffered a broken back, the loss of a CT Page 13080 leg, loss of a spleen, a traumatic brain injury and injury to his hands. The defendant was hospitalized for six months. He spent time at Gaylord for rehabilitation purposes. The plaintiff still has difficulty with his memory. The plaintiff also had problems with alcohol and drugs during the marriage and before but he has been alcohol free for the past 6 months. The plaintiff currently receives Social Security disability and an annuity payment, totalling $415. per week. The defendant is 44 years of age and confined to a wheel chair. It does not appear that he can be gainfully employed at this time.
As a result of this motorcycle accident, the plaintiff received a net settlement of $277,693.49 in May 1996 shortly before their marriage. There is also an additional sum of $10,000. due and owing to the plaintiff from Attorney M. Altschuler.
Six months prior to their marriage, the parties purchased a home in Oxford for $160,000.
All the funds for this home came from the plaintiff's proceeds of his motorcycle case. Title to the marital home was placed in the plaintiff's name. The defendant and her two adult children occupied this home along with the plaintiff.
The parties married on December 24, 1996 and separated in May 1998. All the funds the plaintiff received from his law suits totalling approximately $327,396. have been used up and dissipated. The only asset is the marital home which the parties agreed has a value of $160,000.
The parties had planned to marry prior to the plaintiff's debilitating July 1995 accident. The defendant is 43 years of age. She has some health problems. The defendant was gainfully employed from November 1993 to April 1997. From April 1997 to December 1997 the defendant did not work but remained at home and cared for the plaintiff. She dressed and bathed him; she cleaned the feeding and tracheotomy tubes; she coordinated home care and medical appointments. The plaintiff encouraged the defendant to remain at home and not work. The defendant returned to work from December 1997 to April 1998. She is presently receiving unemployment compensation.
The plaintiff took out a Home Equity Loan to pay off the defendant's Blazer motor vehicle when the defendant left her job CT Page 13081 in April 1997. There is a balance of approximately $14,566 on this Home Equity Loan. Some of the funds were used for bills and to purchase a Certificate of Deposit.
During the course of this short marriage, the plaintiff made loans to the defendants' son for the purchase of a motor vehicle. The defendant testified these loans were paid off. The plaintiff could not remember any repayment. The parties expended funds for repairs, remodeling and landscaping at the marital home. The downstairs bathroom was made accessible for the plaintiff and a patio and entrance way were provided to accommodate him. The defendant's children lived upstairs and the plaintiff and defendant lived downstairs.
The defendant's sons helped to maintain the house, which appears quite large, both inside and out. The defendant's son Robert was of assistance to the plaintiff and provided the plaintiff with necessary care. The plaintiff gave the defendant a portion of the C.D. when it was cashed in, in February 1998.
The defendant testified that the plaintiff did not want any of his family to get any of his money and he wanted to spend it all. Both parties have been successful in spending all the funds.
The defendant took the plaintiff to counseling to assist him in his alcoholic and drug problem and also took him to AA, Milford Mental Health, The Griffin Hospital and Church.
Having been through so much, unfortunately, the parties were unable to resolve their marital difficulties. The defendant indicated she would care for the plaintiff, even now. The court declines to assess fault to either party for the breakdown of the marital relationship.
The court has carefully considered the statutory criteria in reaching the decisions reflected in the orders that follow.
REAL ESTATE
1. The real estate located at 5 Manitook Drive, Oxford, Connecticut shall be immediately listed for sale at a listing price of $160,000, or such other figure as the parties agree upon.
2. Upon the sale of the real estate, there shall be deducted CT Page 13082 from the gross proceeds the home equity loan, real estate commission, attorneys' fees, customary and usual closing costs. The net proceeds shall then be divided 15% to the defendant and the balance (85%) to the plaintiff.
3. From the plaintiff's net proceeds, the CL P lien of $3,295.19 shall be paid as well as any other liens/judgments owed by the plaintiff.
4. The plaintiff shall have the option within 45 days of date to buy out the defendant's interest of 15% in the real estate.
5. The defendant shall vacate the home on or before December 21, 1998.
6. While the real estate is listed on the market, the plaintiff shall be responsible for the home equity loan, real estate taxes, homeowner's insurance, repairs and maintenance.
7. The court shall retain jurisdiction over any disputes arising out of the sale of the real estate.
8. The plaintiff shall continue to be responsible for the electric bill at the marital home and shall hold the defendant harmless therefrom.
ALIMONY
No alimony is awarded to either party.
ARREARS
There is an arrearage of alimony pendente lite in the amount of $564.30. Said amount shall be paid forthwith.
PERSONAL PROPERTY
1. The parties have agreed on a division of their personal property as itemized on the plaintiff's Schedule A. The defendant shall be entitled to the following:
Push lawn mower
Tools CT Page 13083
Upstairs TV
Upstairs VCR
Computer and printer
Computer desk
Combination TV/VCR
her clothing and personal items
The remaining items on Schedule A shall be the sole property of the plaintiff — as well as the remaining items in the marital home not listed on Schedule A.
2. The plaintiff shall be entitled to his 1988 Pontiac TransAm and the Chevy camper.
3. The defendant shall retain her 1992 Acura motor vehicle.
4. The plaintiff shall retain all rights to the promissory note from Milo Altschuler.
5. Each party shall retain their respective bank accounts.
DEBTS
Each party shall be responsible for the debts as set forth in their respective financial affidavits except as above set forth.
COUNSEL FEES
The plaintiff shall pay to the defendant by way of counsel fees the sum of $1500.00.
Coppeto, J.
 Schedule A
Upstairs stove Upstairs refrigerator Nintendo game Three air conditioners Paddleboat CT Page 13084 Patio set Water fountain Rider lawn mower Gas weedwacker Go kart Collection of mugs Projection television VCR for projection television Electric recliner Couch with 2 end recliners End tables from living room Dehumidifier Stereo Downstairs stove Downstairs dishwasher Gun cabinet guns Clothing